UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERENCE LONG, MARK MCKEOWN, PETER PAPASSO, MARK WALSH, AND ROBERT BOTTARY,<br><br>        Plaintiffs<br><br>v.<br><br>CITY OF BOSTON, MASSACHUSETTS, THOMAS MENINO, in his capacity as Mayor of the City of Boston, KATHLEEN O'TOOLE, in her capacity as Commissioner of the Boston Police Department, RUTH BRAMSON, in her capacity as Director of the Human Resource Division of the Commonwealth of Massachusetts, and, the COMMONWEALTH OF MASSACHUSETTS,<br><br>        Defendants. | Docket No. 05CV-10661-PBS<br><br>Jury Trial Requested |

**FIRST AMEMDED COMPLAINT, PRELIMINARY INJUNCTIVE AND COMPENSATORY RELIEF REQUESTED, AND JURY DEMAND**

The plaintiffs bring this First Amended Complaint against the defendants and state as follows:

**I.      INTRODUCTION.**

1.      This is an action for injunctive and compensatory relief challenging the Defendants' unconstitutional system for determining which individuals are hired for entry-level police officer positions in the Boston Police Department. In or about March of 2002, and again in October of 2003, the Plaintiffs, despite having a score of one hundred (100) on the entry-level

1

police officer examination for the City of Boston, and despite their law enforcement or related experience, were not selected for the position of police officer in the City of Boston. Plaintiffs were not selected because of their race (Caucasian) and because the Defendants continued to maintain or permit a quota-based system based on race to determine entry-level hiring when such a system is no longer constitutionally permissible. Further, the Defendants have unlawfully failed to institute a nondiscriminatory selection procedure, as required by law, for such entry-level hiring, and they have hired officers from all female lists without a legal basis for doing so. The plaintiffs seek to be hired as Boston police officers, with back pay, appropriate seniority and benefits.

II.     **JURISDICTION AND VENUE.**

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 in that this claim arises under the Federal Equal Protection clause of the Fourteenth Amendment. Venue is proper pursuant to 28 U.S.C. §1391(b).

III.    **PARTIES.**

3.     The Plaintiffs were at all times relevant hereto adult residents of Boston, Massachusetts. Each has a lifelong goal of being a Boston Police Officer. Each of the plaintiffs has experience in criminal justice and/or is otherwise well qualified to be a police officer.

4.     The Defendant City of Boston is a duly incorporated municipality of the Commonwealth of Massachusetts, and it maintains a police department.

5.     The Defendant Thomas Menino is the Mayor of the City of Boston and in that capacity is responsible for the overall operation and administration of the City of Boston.

6.      The Defendant Kathleen O'Toole is the Commissioner of the Boston Police Department ("BPD") and in that capacity currently acts as the appointing authority for the City of Boston, as that term is defined in Mass. Gen. Laws, ch. 31.

7.      The Defendant Ruth Bramson is the Chief Human Resources Officer for the Commonwealth of Massachusetts, and in that capacity is responsible for the overall administration of the Human Resources Division ("HRD"), which division administers the entry-level civil service testing and hiring lists for the Boston Police Department.

8.      The Defendant Commonwealth of Massachusetts is a state of the United States of America and by statute is responsible for providing civil service lists to municipalities which are part of the civil service system governed by Mass. Gen. Laws, ch. 31.

IV.     **STATEMENT OF FACTS RELATING TO THE NON-SELECTION OF PLAINTIFFS.**

9.      As a first step in the application process to become a Boston Police Officer, applicants are required to take the Massachusetts Civil Service Examination, which is given by HRD.  During 2001, the plaintiffs took the Civil Service examination for the position of police officer in the Boston Police Department.

10.     The Plaintiffs each received a perfect score of one hundred (100) on the examination.  As a result, the Plaintiffs were ranked on the Civil Service List just below disabled veterans, veterans, and candidates with a parent who was killed or injured in the line of duty as a police officer or fire fighter, and those who had received scores greater than 100.

11.     In or about March of 2002, the City of Boston hired approximately 48 new police officers from the Civil Service List described above.  Plaintiffs' names were not reached.  In

October of 2003, the Boston Police Department hired another 56 new police officers utilizing the Civil Service List described above. Again, Plaintiffs' names were not reached.

12. On information and belief, during both rounds of hiring (March of 2002 and October of 2003), the Defendants utilized a hiring system for a majority of the individuals hired, in which it created at least two separate Civil Service Lists, one for minorities (Blacks and Hispanics) and one for Caucasians. In addition, Plaintiffs believe that on at least one occasion during this period of time a separate list of female candidates was also utilized for purposes of hiring.

13. A majority of the individuals hired were chosen by a quota-based system wherein one minority candidate was hired for every one Caucasian candidate hired, regardless of the minority candidate's score on the Civil Service examination and regardless of his or her qualifications. In addition, on information and belief, some hirings were made solely because the candidates were women.

14. Plaintiffs had received higher scores on the Civil Service Test and ranked higher on the Civil Service List than many of the minority and female officers selected. In addition, had the Defendants utilized a race and gender neutral system based solely upon the Civil Service examination score and qualifications, without consideration of race or gender, Plaintiffs would have been hired and/or considered to be Boston Police Officers.

V. **FACTS RELATING TO DEFENDANTS' UNLAWFUL RELIANCE ON THE CASTRO V. BEECHER DECREE.**

15. In or about 1975, after the City of Boston was found to have unintentionally discriminated against minority police officers with respect to the entrance exam for police officers and fire fighters, (see Castro v. Beecher, 365 F.Supp. 655 (D. Mass. 1973)), the parties

4

in that litigation entered into a proposed consent decree that was approved by this Court. See, NAACP v. Beecher, 504 F.2d 1017 (1st Cir., 1975). The parties to that litigation agreed that for the City of Boston, police applicants would be hired by selecting one minority police officer for each white police officer. See, Castro v. Beecher, et al., 522 F.Supp. 873 (D. Mass. 1981).

16. Pursuant to the Court's decision, the City of Boston was also obligated to devise a job-related, nondiscriminatory selection process for the entry-level position of police officer, so that in the future the Department would not use a discriminatory selection process in hiring. Id.

17. The City of Boston and the other Defendants were obligated under the consent decree to continue hiring for the BPD based on a one minority to one white ratio until such time as the number of minority police officers in the Boston Police Department approximated the number of minorities in the relevant labor pool.

18. As of the two rounds of hiring conducted by the Defendant City of Boston in March of 2002 and then later in October of 2003, the number of minority entry-level police officers for the City of Boston had achieved rough parity with the number of minorities in the relevant labor pool.

19. As of the two rounds of hiring described above, the Defendants had no constitutionally justifiable reason for setting a quota requiring a specific number of female police officers to be hired.

20. In addition, on information and belief, the Defendants have never complied with that part of the court's order in Castro v. Beecher, supra, requiring them to devise a valid nondiscriminatory selection process for the position of police officer in the City of Boston, thereby making unlawful its continued reliance on a quota system 28 years after the Castro court decree.

## COUNT 1 – EQUAL PROTECTION, 42 U.SC. § 1983

21.     The preceding allegations are incorporated herein.

22.     The City's policy and practice, under color of law, of favoring minority and female individuals in police hiring constitutes intentional discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, enforceable against States and their subdivisions by virtue of 42 U.S.C. § 1983.

23.     The City's discriminatory hiring practices were conducted pursuant to an official policy and established practice, thus subjecting the City to municipal liability under 42 U.S.C. § 1983.

24.     The actions of Ruth Bramson and the Commonwealth of Massachusetts have authorized, allowed and directed the discriminatory hiring system to exist and continue.

25.     Plaintiffs have been damaged in the form of lost wages, lost seniority in the police department, and emotional distress and suffering. Moreover, they have no adequate remedy at law and are entitled to injunctive relief, ordering the City of Boston to hire them as police officers.

26.     In addition, Plaintiffs are entitled to attorneys fees pursuant to 42 U.S.C. § 1988.

## COUNT 2 – 42 U.S.C. § 1981

27.     The preceding allegations are incorporated herein.

28.     The City's practice, under color of law, of favoring minority and female individuals in police hiring constitutes intentional discrimination and thus violates 42 U.S.C. § 1981.

29.     The actions of Ruth Bramson and the Commonwealth of Massachusetts have authorized, allowed and directed the discriminatory hiring system to exist and continue.

30.     The defendants' discriminatory hiring practices were conducted pursuant to an official policy and established practice, thus subjecting the defendants to liability under 42 U.S.C. § 1981.

31.     Plaintiffs have thus been damaged in the form of lost wages, lost seniority in the fire department, and emotional distress and suffering.  Moreover, they have no adequate remedy at law and are entitled to injunctive relief, ordering the City of Boston to hire them as police officers.

32.     In addition, Plaintiffs are entitled to attorneys fees pursuant to 42 U.S.C. § 1988.

## <u>COUNT 3</u>

## (Title VII)

33.     The preceding allegations are incorporated herein.

34.     The actions of the Defendants as set forth herein violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, <u>et</u>. <u>seq</u>.

WHEREFORE, Plaintiffs pray for:

(A)     A Preliminary and Permanent Injunction, ordering the City to hire plaintiffs as police officers with the amount of seniority they would have had had the City hired them from one of the three requisitions;

(B)     Damages reflecting back pay, lost benefits, front pay and emotional distress and mental suffering, as well as interest;

(C)     Attorneys fees and costs;

(D)     Such other relief as may be just.

## <u>JURY TRIAL REQUEST</u>

Plaintiffs request trial by jury on all issues so triable.

        Respectfully Submitted,

        TERENCE LONG, MARK MCKEOWN,
        PETER PAPASSO, MARK WALSH, AND
        ROBERT BOTTARY,

        By Their Attorneys:

        SHEEHAN, PHINNEY, BASS + GREEN,
        Professional Association


        By:  /s/Mark Ventola
             Mark Ventola
             BBO# 549570
             260 Franklin Street
             Suite 1901
             Boston, MA 02110
             (617) 897-5630


Dated:   June 3, 2005